|     |     |
| --- | --- |
| 212 | 263 |
| 216 | ²252 |

## Miller *v.* Henderson.

*Mandamus—Ministerial duty—Refusal to perform duty—Will—Register of wills—Probate.*

To compel performance of ministerial duties by public officers mandamus is the appropriate remedy, but it cannot be invoked until there has been a refusal to perform such duties; and the refusal must clearly appear.

Where the register of wills has admitted a will to probate and a contest has arisen between the executor named in the will alleged to be mentally incompetent and another person who has applied for letters of administration with the will annexed, and both parties have arranged for a hearing before the register, the executor cannot before the hearing and before the register has actually refused to issue letters, maintain a mandamus to compel the issue of letters to him.

Argued Feb. 28, 1905. Appeal, No. 41, Oct. T., 1905, by Martha A. Shirley, from order of C. P. Armstrong Co., Dec. T., 1904, No. 169, directing issue of peremptory mandamus in case of John W. Miller v. Harry B. Henderson, register of wills. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and ELKIN, JJ. Reversed.

Petition for mandamus. Before PATTON, P. J.
The facts are stated in the opinion of the Supreme Court.

*Error assigned* was order awarding mandamus.

*William J. Christy,* of *McCain & Christy,* for appellant.— Inasmuch as an appeal may be taken from the decision of the register granting or refusing letters testamentary, it would seem that the official act is therefore a judicial determination of the question, involving the sound judgment of the register: Shoenberger v. Lancaster Savings Institution, 28 Pa. 459.

Mandamus will lie to compel the performance, by public officers, of duties purely ministerial in their character; but as to all acts and duties necessarily calling for the exercise of judgment and discretion on their part, mandamus will not lie: Dechert v. Com., 113 Pa. 229.

The writ of mandamus ought not to have been granted under the facts and circumstances surrounding this case. As authority for the above statement we cite: Commonwealth v. Thomas, 163 Pa. 446.

*R. L. Ralston*, with him *Calvin Rayburn*, for appellee.—The register is bound to issue letters to the person named as executor in the will: Bowman's App., 62 Pa. 166 ; Sill v. McKnight, 7 W. & S. 244 ; Com. v. Bunn, 71 Pa. 405 ; Taylor v. Com., 103 Pa. 96 ; Pomeroy's App., 24 W. N. C. 296.

OPINION BY MR. JUSTICE BROWN, May 24, 1905 :

Robert Miller died July 7, 1904. His will, executed September 21, 1894, was admitted to probate by the register of wills of Armstrong county, July 28, 1904. The testator named a nephew, John W. Miller, the appellee, as executor, but at the time of the probate of the will he was in confinement in the hospital for the insane at Dixmont, having been committed to that institution by the court of quarter sessions of Armstrong county on April 15, 1904, under the provisions of the Act of assembly of April 20, 1869, P. L. 78. He had not been adjudged a lunatic, but, on the finding of a commission that his case was one suitable for confinement, he was committed to the institution. In this situation certain of the residuary legatees of the testator, among them Martha A. Shirley, the appellant, appeared before the register and applied for letters of administrator cum testamento annexo, and that officer appointed Isabella Ralston and the appellant administratrices, but letters were not issued to them for the reason that the former refused to act as coadministratrix with the latter. The register subsequently announced that he would issue letters to the appellant alone, but recalled this on receipt of notice that John W. Miller, the executor named in the will, was about to make application for his release from confinement. On September 24, 1904, the court of quarter sessions ordered his discharge from

the hospital, and on September 29, five days later, he appeared before the register and demanded letters testamentary on the will of his uncle. Notice was then served on the appellant of this application of Miller, and the register, with the consent of herself and Miller, fixed a day to take testimony as to the fitness of the latter to act as executor. Testimony was submitted on each side at different times, and on November 1, 1904, there was a continuance to November 9, 1904, Miller agreeing that on that day he would close his testimony in support of his application for letters. Instead of proceeding before the register on that day he presented his petition to the court of common pleas of the county, asking for a writ of mandamus to compel the register to issue the letters to him. The alternative writ was directed to be issued, and was served on the register at the very time the appellee had agreed to appear before him and close his case. To the alternative writ a return was made by the appellant, who was given leave to intervene, and on the appellee's demurrer to her return the peremptory writ was directed to issue.

With the foregoing facts before it, the court below was of the opinion that the petitioner for the writ of mandamus was entitled to it, because it was to enforce the performance of a purely ministerial act by the register. The language of the learned judge is: "As we view this case when the last will and testament of Robert Miller was propounded before H. B. Henderson, register of wills, and he admitted it to probate, it was a judicial decision by him that it was genuine, that it was regular in form and execution, that the testator was competent to make it, and that he had appointed John W. Miller his executor, and that said document should be duly entered upon the records. The admission of the will to probate was in effect appointing John W. Miller executor of the instrument thus probated. The proof of the authority of the executor to act as such, is a production of a copy of the will by which he is appointed, certified under the seal of the ordinary. This is usually called the probate: Bouvier's Law Dic., Title Probate of Wills. 'If the execution of the will be properly proved, the register is bound to issue letters testamentary to the executor named therein, unless disqualified by minority. He is the appointee of the testator, not of the register, and

the latter has no discretion in the matter:' Will of Wm.
Neal, 17 W. N. C. 191. 'With the probate of the will the
register's judicial powers cease:' Mathews v. Biddell, 8 .Pa.
Superior Ct. 112. 'The register of wills performs the full
measure of his duty when he requires the production of the
will for probate:' Estate of Sarah Nichols, 3 Pa. Superior
Ct. 484. Therefore, as we view it, when the register ad-
mitted the will to probate, and registered it in his office, he
appointed, ipso facto, John W. Miller executor, and nothing
further remained to be done by him except to give Miller a
certificate of his appointment, so that Miller could show his
authority to act as executor, to those who might question it.
Hence, the register had no power or jurisdiction, after he had
admitted the will to probate, to inquire whether or not said
John W. Miller was sane or insane, fit or unfit, to perform the
duties of executor. There is no act of assembly authorizing
any such hearing or trial before the register, and he would be
without power to enforce any decree dismissing John W. Mil-
ler as executor or appointing Martha A. Shirley admx. c. t.
a. In our opinion the entire proceedings before the register,
after the probate of the will, and directing it to be registered,
were without jurisdiction and void."

Even if the foregoing view was a correct one, the real
question before the court below and now before us is : Ought
the writ to have gone out against the register under the facts
disclosed ? To compel performance of ministerial duties by
public officers, mandamus is the appropriate remedy, but it
cannot be invoked until there has been a refusal to perform
such duties; and the refusal must clearly appear : Common-
wealth v. Cochran, 1 S. & R. 473. The averment in the re-
turn to the alternative writ is that the register never abso-
lutely refused to issue letters testamentary to the appellee.
On the contrary, by the demurrer, it is admitted that, by
the agreement of the appellee himself, proceedings were
going on before the register to enable him to pass intelligently
upon the petition for letters testamentary at the very time
the petitioner applied for the mandamus. The letters ap-
plied for may be issued to the appellee, as is also admitted by
the demurrer. The case as presented is not one of a refusal to
perform an alleged ministerial duty, but is that of a public

officer, who, having before him a petition to perform it, which, with the consent of the petitioner, he was considering, and, while so considering, was served with the mandatory writ directing him to do what he had never refused to do. The writ should have been denied for the reason that it did not appear that the respondent had refused to perform what the appellee alleged was a ministerial duty owed to him.

The register may issue letters testamentary to the appellee when free to act, after the disposition of this appeal. If he should refuse them and improperly award letters of administration to another, the orphans' court, on an appeal, can correct any wrong that may be done; but the question of the appellee's remedy for such wrong is not now before us. The order of the court below, directing the writ of peremptory mandamus to issue, is vacated and set aside and the petition for the writ is dismissed, the costs below and on this appeal to be paid by the appellee.