# William F. Mosser Co., to use, Appellant, v. Cherry River Boom & Lumber Co.

*Contracts—Impossible of performance—Sale—Bark—Construction of word—"Advance"—Payment from special fund—Limitation on time not condition—Return of money advanced—Loan.*

1. Where a purchaser of all the bark from a specified tract of land agrees to pay a designated price per ton for it and also to advance to the seller a large sum of money, and the contract provides that the "advance payment" shall be returned by allowing a credit of one dollar a ton on all bark shipped from the tract, and contrary to the expectation of both parties the tract is exhausted before all of the advance was repaid, the unpaid balance of the advance may be collected by the purchaser from the seller.

2. In such case, the exhaustion of the supply of bark may relieve the seller from the duty of furnishing additional tonnage, but it does not discharge him from the obligation assumed to make repayment of the unpaid portion of the moneys advanced.

3. While it is true that if the parties have agreed to look to a special fund for payment, there can be no further recovery when it is exhausted, yet where such provision is inserted merely for the purpose of fixing the time at which payment shall become due, such a provision is a limitation on the time of payment, and not a condition of making it.

4. If a contract of sale leaves it doubtful as to the intention of the parties that an advance should be repaid if the goods could not be delivered as contemplated, a construction should be adopted which would prevent a forfeiture of the fund placed in the seller's hands as an advance on account of expected deliveries.

5. The word "advance" in popular usage may mean a "loan" and is distinguished from an irrevocable gift called an "advancement."

6. One, who by mistake of fact, pays more than is due, may recover the overpayment.

7. If a contract becomes impossible of performance, the relation ends, and the money advanced may be recovered back.

Argued April 20, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 179, Jan. T., 1927, by plaintiff, from judgment of C. P. No. 4, Phila. Co., Sept. T., 1926, No. 7343, for defendant on question of law raised by affidavit of defense, in case of William F. Mosser Co., to use of the North American Provision Company v. Cherry River Boom & Lumber Co. Reversed.

Assumpsit on contract. Before AUDENRIED, P. J.

The opinion of the Supreme Court states the facts.

Judgment for defendant on question of law in affidavit of defense. Plaintiff appealed.

*Error assigned* was judgment, quoting it.

*Walter Lee Sheppard* and *W. W. Porter,* of *Porter, Foulkrod & McCullagh,* for appellant.—Defendant was bound to repay the whole of the sum advanced: Union Trust Co. v. Gilpin, 235 Pa. 524; Cossgrove v. Himmelreich, 54 Pa. 203; Lieb v. Painter, 42 Pa. Superior Ct. 399.

To sustain defendant's contention, it is necessary to hold that there is an impossibility of performance, which is never done if any other fair interpretation of the language is available: Bingell v. Ins. Co., 240 Pa. 412.

Where the prescribed method of determining the time of performance is rendered impracticable, the obligation to perform within a reasonable time nevertheless remains: Nunez v. Dautell, 86 U. S. (19 Wall.) 560.

*J. R. Guckes,* of *Guckes, Shrader, Burtt & Thornton,* for appellee.—The return of the advance was contingent and was expressly restricted to credits of the bank:

Keller v. Cohen, 217 Pa. 522; Creery v. Thompson, 26 Pa. Superior Ct. 511; Wertz v. Klinger, 25 Pa. Superior Ct. 523; Alexander v. Righter, 240 Pa. 22.

There are no equitable grounds for recovery by plaintiff: A. O. U. W. v. Mooney, 230 Pa. 16; Frazier v. Monroe, 72 Pa. 166; Albright v. Albright, 228 Pa. 560; Dixon v. Breon, 22 Pa. Superior Ct. 340; Sankey v. Bank, 78 Pa. 48; Ackman v. Jaster, 179 Pa. 463; Sulkin v. Gilbert, 218 Pa. 255; Bomgardner v. Blatt, 35 Pa. Superior Ct. 361; Steel v. Arnold, 8 W. N. C. 249.

OPINION BY MR. JUSTICE SADLER, May 9, 1927:

This action of the William F. Mosser Company, for the use of the assignee of its rights, is based on a contract entered into with the Cherry River Boom & Lumber Company, defendant. The former purchased from the latter bark for use in its tanneries, and had, in 1902, agreed to buy all produced from certain lands at a fixed price. In 1908 additional property was acquired by defendant, which it desired to develop, and it then agreed to cut and sell all of the hemlock bark from the designated tract at a fixed price per ton. It undertook to deliver not less than 10,000 nor more than 20,000 tons each year, which might be cut on the new or old acreage as desired. The contract, which gives rise to this dispute provided, in part, as follows: "As a further inducement for making this contract, the William F. Mosser Company, party of the second part, hereby agrees to advance to the party of the first part one hundred and fifty thousand dollars ($150,000) on the bark contracted for in this agreement; seventy-five thousand dollars ($75,000) to be paid when this agreement is signed, and seventy-five thousand dollars ($75,000) on the 30th day of January, 1909. This one hundred and fifty thousand. dollars ($150,000) advance payment to be returned to the party of the second part, without interest, by allowing a credit of one dollar ($1) per ton on all bark shipped from lands included in this contract of April

25, 1908, only; that is to say, the Cherry River Boom & Lumber Company shall bill said bark to the party of the second part at seven dollars ($7) per ton and shall allow said party of the second part one dollar ($1) per ton credit thereon until the aggregate amount of credits so made shall amount to the advance payment of one hundred and fifty thousand dollars ($150,000); or until one hundred and fifty thousand (150,000) tons of bark shall have been delivered under this contract; but it is understood and agreed that this credit of one dollar per ton does not apply to bark to be shipped under the original agreement of March 7, 1902."

The advance payment provided for was made, and deliveries of the material contracted for continued thereafter until December 15, 1925, when the parties determined a further supply could not be secured, and that it was impossible to furnish, by 6,815.15 tons, the amount agreed upon, and for which the $150,000 had been paid on account. This action was brought to recover back the amount claimed to be due the plaintiff at the rate of one dollar per ton for the deficiency. An affidavit of defense was filed raising a question of law, in which it was insisted that no cause of action had been set forth. It was claimed that the relation of debtor and creditor did not exist, and that the seller was discharged from any further obligation when it turned over all the bark which could be secured from the land in question. The court below sustained the position of the defendant, and entered judgment in its favor, and plaintiff has appealed.

The solution of the controversy depends upon the construction of the written agreement of the parties. It will be noticed that the $150,000 furnished defendant was called "an advance payment to be returned to the [Mosser Co.] without interest by allowing a credit of $1 per ton." "While the word [advance] in its strictly etymological significance indicates money paid before or in advance of the proper time of payment, and does not therefore imply a loan, it has been so frequently used as

its equivalent that it may be said that the word, whether taken according to its meaning in law or according to its meaning in common usage, includes loans" (2 C. J. 32), and is distinguished from an irrevocable gift, called an advancement: High's App., 21 Pa. 283. When used as a verb, it means "to put forward; to supply beforehand; to furnish on credit or before goods are delivered or work done;......to pay money before it is due; to prepay on account of an anticipated debt; to furnish money for a specified purpose, understood between the parties, the money or some equivalent to be returned": 2 C. J. 33. This construction is sanctioned in Balderston v. National Rubber Co., 18 R. I. 338, 27 Atl. 507, and Gihon v. Stanton, 9 N. Y. 476, commented upon with approval in Murphy's Assigned Est., 214 Pa. 258. In the case of a factor, where advances have been made, there is an implied promise to repay by the consignor any balance received in excess of the value of the goods forwarded (Murphy's Assigned Est., supra), and, in reason, the same rule should be applied here. If treated as a loan, it is not necessary to a recovery that there be an express promise to repay (41 C. J. 3), though in the instant case we find a provision for a return.

Defendant contends the transaction was in effect a sale of all the bark on a specified tract to the plaintiff, who advanced funds for the development of the property, so that plaintiff's needs might be amply supplied, and that it therefore took the risk of any deficiency. But the contract does not so state, for it provides that the purchase should be of bark at the rate of $7 per ton when cut and delivered, and stipulates that the advance shall be repaid as money by allowing a credit of $1 on the purchase price *"until* the aggregate amount of credits so made shall amount to the advance payment of $150,000; or *until* 150,000 tons of bark shall have been delivered under this contract." "In arriving at the intention of the parties, where the language of a contract is susceptible of more than one construction it should be con-

strued in the light of the circumstances surrounding them at the time it is made," and there must be considered "the nature and situation of the subject-matter, and the apparent purpose of making the contract" (13 C. J. 542), in attempting to arrive at the true meaning.

At the time of the execution of the contract it was apparently assumed by both parties that there was more available bark than the number of tons which defendant agreed to furnish, and, acting on this belief, the advance of $150,000 was made. One who by mistake of fact pays more than is due may recover the over-payment: 2 Williston on Contracts, 2786; Riegel v. American Life Ins. Co., 140 Pa. 193; Goettel v. Sage, 117 Pa. 298. As was said in Union Trust Co. v. Gilpin, 235 Pa. 524, 530: "Essentially the claim here [based on the mispayment of a legacy] is founded on a transaction in which there was a total failure of consideration, due to a mutual misunderstanding as to the existence of the subject-matter. In such case, where the plaintiff's equity is complete, there can be no doubt of his right to recover." So, if the contract becomes impossible of performance, the relation ends, and the money advanced can be recovered back (Hudson v. West, 189 Pa. 491; Lieb v. Painter, 42 Pa. Superior Ct. 399; Paxton Lumber Co. v. Panther Coal Co., 83 W. Va. 341), and the same is true if the right to rescind arises because of failure to perform by the other party: Crossgrove v. Himmelreich, 54 Pa. 203. There are cases which have recognized the rule that, in the absence of an express provision to the contrary, if the act to be performed is necessarily dependent on the continued existence of the specific thing, the perishing thereof before time of performance, without the fault of the promisor, as by an act of God, public enemy or the law, will excuse the contractor on the ground of an implied condition in this regard, and further deliveries by the vendor will be excused: Dixon v. Breon, 22 Pa. Superior Ct. 340; 12 A. L. R. 1274, note. The exhaustion

of the supply of bark in the present case may have relieved the defendant from the duty to furnish additional tonnage (13 C. J. 642), but it did not discharge from the obligation assumed to make repayment of the claim for the unpaid portion of moneys advanced.

It is urged, however, that, though the advance in the present instance be treated as a loan, yet it was made solely payable, in a particular way and manner, by the application of credits on the sale price of $1 for each ton delivered, and since no such source is longer available, all bark having been exhausted, there can be no recovery here, or any personal claim made against the defendant for the deficiency arising. It is undoubtedly true that, where parties have agreed to look to a special fund for payment, there can be no further recovery when it is exhausted (Chambers v. Jaynes, 4 Pa. 39; Wertz v. Klinger, 25 Pa. Superior Ct. 523), and the same is held where the recompense is, by the terms of the agreement, to be limited to anticipated profits from an enterprise undertaken: Alexander v. Righter, 240 Pa. 22; Keller v. Cohen, 217 Pa. 522. But where "it appears that a stipulation for payment on receipt of a specified fund, or a provision, indicating the source from which a fund for payment or performance is to be procured, is inserted merely for the purpose of fixing the time at which [payment] shall become due, such [provisions] will not be regarded as evidencing conditions precedent, but performance may be demanded within a reasonable time after the fund should have been realized or the contingency from which it is to be secured should have happened": 13 C. J. 632. In Nunez v. Dautel, 86 U. S. 560, a note was given to be paid "as soon as the crop can be sold or the money raised from any other source." In upholding the right to recover, when the borrower defaulted, the court said, in part: "Payment was not conditional to the extent of depending wholly and finally upon the alternatives mentioned. The stipulations secured to the defendants a reasonable amount of time

within which to procure in one mode or the other the means necessary to meet the liability. Upon the occurrence of either of the events named or the lapse of such time the debt became due." A provision such as found in the agreement here is a limitation on the time of payment, but not a condition of making it. Even if the contract was left doubtful as to the intention of the parties to repay, if bark could not be delivered and sold as contemplated, a construction should be adopted which would prevent a forfeiture (13 C. J. 541) of the fund placed in defendant's hands as an advance on account of expected deliveries.

There was no sale of the bark when the $150,000 was paid, though the time of repayment of the sum advanced was fixed, and the right to reimbursement was not limited to funds arising from credits on account as stipulated for. All of the available material, the subject of the contract, has been disposed of, and it is impossible to supply more, as the parties have agreed. There still remain undelivered 6,815.15 tons, and there has not been repaid the amount claimed in plaintiff's statement. The facts averred, if true, as must be assumed in the present proceeding, exhibit a cause of action sufficient in law to make necessary the filing of an affidavit of defense by the defendant (Rhodes v. Terheyden, 272 Pa. 397), and the assignments of error must be sustained.

The judgment of the court below is reversed, and a procedendo awarded.