Sheets et al., Appellants, *v.* Armstrong et al.

386

Argued January 6, 1932. Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

*Oliver K. Eaton,* with him *Ralph C. Davis,* for appellants.—The observance of a zoning ordinance, enacted in a proper exercise of the police power, ought to be punctilious: Ward's App., 289 Pa. 458; Bowers et al. v. Wright, 4 W. N. C. 460.

The contract is against public policy and illegal: Stewart's App., 56 Pa. 413; Ley v. Huber, 3 Watts 367.

A town hall at this location will constitute a nuisance: Neff v. Gorman, 303 Pa. 186.

There was an abuse of administrative discretion: Pearlman v. Pittsburgh, 304 Pa. 24; Kratz v. Allentown, 304 Pa. 51.

The price was excessive.

*William Watson Smith,* of *Smith, Buchanan, Scott & Gordon,* with him *Mortimer B. Lesher, Miles H. England* and *Leon E. Hickman,* for appellees.—Discretionary powers of public officials will be interfered with by the courts only when it is made apparent that their discretion has been abused: Roth v. Marshall, 158 Pa. 272; Lamb v. Redding, 234 Pa. 481; Hibbs v. Arensberg, 276 Pa. 24; Fayette Co. Comrs. Petition, 289 Pa. 200; Phila. Electric Co. v. Phila., 301 Pa. 291.

There was no abuse of discretion in the purchase of the property: Girard Trust Co. v. Phila., 248 Pa. 179; Penna. Co. for Ins. on Lives, etc., v. Phila., 268 Pa. 559.

The contract for the purchase of the land need not be let to the lowest bidder: Silsby Mfg. Co. v. Allentown, 153 Pa. 319; Yingling v. Dunlap, 68 Pa. Superior Ct. 425; Stratton v. Allegheny Co., 245 Pa. 519; Com. ex rel. v. Tice, 272 Pa. 447; Phila. Co. v. Pittsburgh, 253 Pa. 147.

No question of nuisance is involved: Burke v. Hollinger, 296 Pa. 510; Thoenebe v. Mosby, 257 Pa. 1.

A town hall may be erected on the property without an amendment of the zoning ordinance: State Hospital for Criminally Insane v. Water Co., 267 Pa. 29; Consolidated Cigar Corp. v. Corbin, 285 Pa. 273.

*Ralph H. Smith* and *Thomas E. Whitten,* for Charles C. McGovern, one of the county commissioners.

OPINION BY MR. JUSTICE SCHAFFER, May 9, 1932:

This is a taxpayers' bill to restrain the county commissioners and other public officials of Allegheny County from carrying out the terms of a contract entered into by a majority of the commissioners with the Schenley Farms Company, providing for the purchase of a tract of ground as the site for a public auditorium. After hearing, the court below dismissed the bill. Two of the plaintiffs appeal.

At an election held June 26, 1928, a majority of the electors of the county voted in favor of the increase of its indebtedness in the sum of six million dollars for the purpose of acquiring land and erecting thereon a public auditorium as authorized by the Act of April 27, 1925, P. L. 340, substantially repeated by the General County Law of May 2, 1929, P. L. 1278, which provides (section 605): "Counties shall have power to take, purchase or acquire, through condemnation proceedings, property for the purpose of erecting thereon public auditoriums, public libraries, public memorial buildings and monuments."

The chancellor found that, following the popular mandate for the purchase of the ground, the commissioners had the matter under consideration for at least two years, during which time more than twenty-five properties were brought to their attention and many public hearings were held. The Allegheny County Planning

Commission recommended to the commissioners the purchase of the plot here in question.

On March 19, 1931, in pursuance of a resolution theretofore passed by a majority vote of the county commissioners, two of their number, Joseph G. Armstrong and E. V. Babcock, entered into the contract now called in question for the purchase from the Schenley Farms Company of its land. Charles C. McGovern, the remaining commissioner, did not sign the contract and is opposed to the acquisition of the lot in question by the county.

The grounds for the attack on the contract laid in the bill and urged upon us are: (1) That the price to be paid is grossly excessive; (2) that there was a bartering of the county's power of condemnation for the benefit of the Farms Company; (3) that the proposed building will, if erected, violate the zoning ordinance of the City of Pittsburgh; (4) that the building will constitute a nuisance to the damage of the plaintiffs, owners of real estate in the vicinity; (5) that the site is inadequate and that a building for the uses intended cannot effectively function thereon; (6) that in agreeing to buy the property in question there was a gross abuse of administrative discretion by the commissioners; (7) that the contract permitted speculation in the real estate of others; and (8) that there will be a great waste of public money if the contract is carried out.

As to the alleged excessiveness of price fixed by the contract at eight dollars per square foot, or a total price of $1,127,911.28, the chancellor found as a fact that it was not excessive. There was testimony to the contrary, but reputable and competent real estate experts testified that the price to be paid is a fair one. We consider ourselves bound by the finding of the chancellor approved by the court in banc as to this: Houghton v. Kendrick, 285 Pa. 223; Silverstein v. Boyle, 306 Pa. 544.

Is there a bartering of the county's power of eminent domain for the benefit of the Farms Company? In order to understand the import of this question, an explana-

tion of the physical situation of the property to be acquired is necessary. The block of ground to be purchased is bounded by Fifth Avenue, Bigelow Boulevard, Tennyson Avenue and Ruskin Avenue. Two comparatively small parcels of the land going to make up the block, both of them fronting on Bigelow Boulevard, the Farms Company did not own. One of these, belonging to Shanahan, the Farms Company had optioned prior to the execution of the contract of sale to the county. The other was owned by Keefer. This property the Farms Company was endeavoring to acquire. The contract provides that in the event the Farms Company cannot obtain it and the county in order to secure it shall be required to condemn, the county agrees to accept from the Farms Company a deed for all the rest of the land and the Farms Company agrees to indemnify the county against any payments it may be required to make for the condemned property in excess of eight dollars per square foot and to give the county an approved bond as security for such payment. Just how it can be said that this constitutes a bartering of the county's power of eminent domain for the benefit of the Farms Company, we are at a loss to see. The condemnation is not to be for the benefit of the Farms Company, but for the benefit of the county. If the condemnation price is higher than that fixed by the contract at the square foot rate, the Farms Company must pay to the county the excess.

The part that the zoning ordinance of the City of Pittsburgh plays in the controversy was much discussed in oral argument and is also a subject quite elaborately treated in the briefs. In our view it plays no part and has been eliminated so far as the proposed building is concerned by legislation and the ordinance of the city. The portion of the block of ground fronting on Bigelow Boulevard and extending back one hundred and twenty feet is in the class "B" residence district as fixed by the zoning ordinance. This classification does not permit the erection of such a building as is contemplated, a pub-

lic auditorium. The remainder of the block is in the "A" residence district. Whether such a building can be constructed in that kind of a district may be open to debate, but no determination need be reached as to this owing to our conclusion that the entire zoning ordinance is now inapplicable. The law authorizing the fixing of zoning restrictions in cities of the second class is the Act of March 31, 1927, P. L. 98, 53 Purd. section 9183 et seq., which took the place of an earlier act and modified in respect to procedure the Act of May 1, 1923, P. L. 122. Under the original act, the zoning ordinance in Pittsburgh was adopted. The General County Law of 1929, heretofore cited, after empowering counties to acquire property and erect thereon public auditoriums, stipulates in section 608 that no county shall acquire property for or erect a public auditorium within the limits of any city without the consent of the corporate authorities thereof. On February 18, 1931, the City of Pittsburgh by ordinance gave its consent to the acquisition by the county of the property in question and the erection thereon of the auditorium. In this consent ordinance, it expressly repealed any ordinance "conflicting with the provisions of this ordinance." The effect of this enactment was to abrogate the zoning ordinance so far as this property is concerned. The city could not consent to the acquiring of the land and the erection of the building with one hand and forbid its erection by the zoning ordinance with the other. It was the view of the chancellor that the consent ordinance amended the zoning ordinance. The court in banc, however, concluded otherwise and that further action by the city amending the zoning ordinance or action by its board of adjustment under the zoning ordinance is necessary. The court was mistaken in this. No further action by the city is required.

To the contention that the building will constitute a nuisance to the damage of plaintiffs as owners of real estate, we cannot lend a ready ear. It is said that the

use of the building will bring large numbers of people to it and will cause traffic congestion in its vicinity. These are among the plagues of city dwellers under present-day conditions, but it would be difficult legally to badge as a nuisance a building aiding in bringing about such situation. Speaking through Mr. Justice SIMPSON in Houghton v. Kendrick, 285 Pa. 223, 226, we said: "Any other use of a property than for residential purposes, may be, and at times is, an annoyance to dwellers in the vicinity......But the mere fact of annoyance does not establish the existence of a nuisance, and hence, standing alone, it will not be a sufficient basis for an injunction against the particular use from which the alleged annoyance arises. He who lives in a city must bear with the inconveniences growing out of his location there, just as he enjoys the benefits flowing from it." The court found as a fact that the proposed building will not be or create a nuisance per se and we agree with this finding.

To the argument that the site is inadequate and that a building for the uses intended cannot effectively function thereon, our answer must be that these are matters which the county commissioners had to decide; they are not for us to determine.

Nothing brought to our attention indicates a gross abuse of discretion by the county commissioners as appellants contend there was. Apparently they think that the entire project of building the auditorium is a mistaken and wasteful one, and under today's conditions there may be grounds for such a conclusion. With this, however, we have nothing to do; a majority of the people of the county approved the project and carrying out their mandate the commissioners entered into the contract now attacked. In so doing nothing indicates to us that they abused their discretion.

It is urged upon us that because of a situation which arises out of the transfer of the Shanahan property as part of the large block of land the contract permits speculation in the real estate of others at the county's ex-

pense and for this reason the contract is illegal and void. As before stated, the Farms Company did not own the Shanahan property. It has entered into an agreement with the owners to purchase it for sixty thousand dollars at the rate of six dollars and twenty-five cents per square foot. At the square foot price of eight dollars, it will receive for the property a profit of sixteen thousand eight hundred dollars. This price of eight dollars a square foot it must be borne in mind was an average price. There is no dispute over the fact that the most valuable part of the block was the Fifth Avenue frontage. In making the price of eight dollars for the whole, the seller had doubtless taken into account that he could get the Shanahan property for less and also had to consider that the Keefer property, which had a valuable house on it, might cost it more. We are unable to see in this transaction anything indicating bad faith or adversely affecting the contract.

It is not within our competence to pass upon the suggestion that there will be a great waste of the public money if the contract is carried out. The people determined to make the expenditure and fixed the sum. As long as it is within constitutional limits we cannot review their action or set it aside.

Some point is made in appellants' brief of the circumstance that in connection with the purchase of the lot the commissioners have agreed to buy also a one foot strip of ground on the opposite side of one of the streets bounding the property at the same price per square foot as that paid for the block. We think this of no significance in passing on the real questions involved. It is the intention to throw this narrow strip into the pavement to widen it. Furthermore, no question is raised in the bill as to the purchase of this strip, as is pointed out in the findings of the chancellor.

So far as the alleged desirability of purchasing a different tract of ground from that contracted for is concerned, it is sufficient to say that we would not review

the discretion of the commissioners in the selection of a site. They are the duly elected officials of the county charged with the duty of determining where the building shall be located. Discretionary powers of public officials will be interfered with by the courts only when it is made apparent that their discretion has been abused: Dillon on Municipal Corporations, volume 1, page 457; Roth v. Marshall, 158 Pa. 272; Lamb v. Redding, 234 Pa. 481; Hibbs v. Arensberg, 276 Pa. 24; Fayette County Commissioners' Petition, 289 Pa. 200; Phila. Electric Co. v. Phila., 301 Pa. 291.

It is contended by appellants that the land could not be purchased except after advertising for bids, our attention being directed to section 348 of the General County Act of 1929, which provides that no contract shall be made for over three hundred dollars unless made with the lowest and best bidder after published notice. We think from the tone of his brief as to this feature of his argument that appellants' able advocate who argued the case at our bar is not strong in the faith that this provision covers contracts for the purchase of real estate. We are of opinion that it does not, any more than it would apply to the purchase of a patented article (Silsby Mfg. Co. v. Allentown, 153 Pa. 319; Yingling v. Dunlap, 68 Pa. Superior Ct. 425, KEPHART, J.); or to contracts for the employment of an architect (Stratton v. Allegheny Co., 245 Pa. 519); or an attorney: Com. v. Tice, 272 Pa. 447. The reasoning in Phila. Co. v. City of Pittsburgh, 253 Pa. 147, 153, as to the nonapplicability of the forbidding section of the statute, fully covers contracts for the purchase of real estate.

The decree of the court below dismissing the bill is affirmed at appellants' cost.