Schenley Farms Co., Appellant, *v.* McGovern et al.

. Argued March 24, 1933.  Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

**68**

*Leon E. Hickman,* with him *William Watson Smith,* of *Smith, Buchanan, Scott & Gordon,* for appellant.

*John H. Lauer,* Assistant County Solicitor, and *O. K. Eaton,* with them *J. P. Fife,* County Solicitor, for appellees.

*A. W. Powell,* Solicitor, for County Controller, Robert G. Woodside, appellee.

OPINION BY MR. JUSTICE SIMPSON, June 30, 1933:

This litigation grows out of a contract between The Schenley Farms Company, plaintiff herein, and the County Commissioners of Allegheny County, by which the former agreed to sell and the latter to buy what is known as the "Town Hall Site" in the City of Pittsburgh, the purchase price of which was to be paid out of the proceeds of county bonds to be sold for that purpose. Those interested in the prior litigation will find it detailed in Sheets v. Armstrong, 307 Pa. 385, and Palmer's App., 307 Pa. 426.

Plaintiff instituted the present proceeding by a petition for a writ of alternative mandamus "commanding Charles C. McGovern, Cadwallader M. Barr and Wil-

liam D. Mansfield, as County Commissioners, to issue and sell a sufficient number of the bonds of said County, to realize a sum sufficient to discharge its obligations to the plaintiff under the contract [for the purchase of the Town Hall Site] and to draw one or more warrants totalling the said sum on the county treasury;......commanding Robert G. Woodside, as County Controller, to approve the plaintiff's claim under the said contract and to countersign the said bonds and warrants in the amount aforesaid; and commanding Robert S. Cain, as County Treasurer, to pay from the proceeds of the sale of said bonds the amount to which the plaintiff is entitled under the contract, (a) to the plaintiff or (b) partly to the plaintiff and partly by withholding, or placing with a third party, a portion of the said sum sufficient for, and to be applied to, the payment, discharge and satisfaction of record of liens, encumbrances and taxes" charged against the property.

An alternative writ was allowed and served upon defendants, who moved to quash it, and, after this motion was overruled, severally made return thereto. Plaintiff demurred to the returns, and the court below, after argument, overruled the demurrers, with leave to proceed. Plaintiff then filed a paper stating that it "elects to stand upon its demurrers heretofore filed......and respectfully declines to join issue on the returns and amended returns of the defendants respectively, and to proceed to trial in this case," whereupon the court below made an order that "the petition for a mandamus filed by plaintiff, and the alternative writ of mandamus issued pursuant thereto, are hereby dismissed and judgment is hereby entered in this case in favor of the defendants." Plaintiff then took the present appeal. The judgment must be affirmed.

In its petition for the writ of mandamus, plaintiff says that it "has made no request of Robert G. Woodside, Controller of Allegheny County, to approve the plaintiff's claim under the Town Hall contract, or to counter-

sign a warrant on the County Treasury therefor, or to approve and countersign the sale of Town Hall bonds, nor has it requested of Robert S. Cain, County Treasurer, the sum due it under the Town Hall contract, because both of said defendants were at all times since August 1, 1932 [the time when plaintiff alleges it was ready to carry out its contract and, to that end, had tendered to the county commissioners a duly executed deed for the Town Hall Site], and still are, powerless to perform the said acts in view of the refusal of the said County Commissioners to accept the said tender of the deeds and other written instruments and their refusal to issue or sell bonds as hereinbefore set forth." Nevertheless, as shown by the foregoing extract from the prayers of the petition, it urged, in the court below, that these defendants be commanded to do the very things that, in its petition, it thus averred they "were at all times since August 1, 1932, and still are powerless to perform," and, on this appeal, plaintiff asks that the judgment of the court below be reversed, because it did not command these defendants to do what it thus admits they were powerless to do. Of course no court would do this, especially as it might result in a proceeding for contempt, if they continued to fail to do that which they were not asked to and could not in fact do.

Even if the County Controller and County Treasurer were now able to do what plaintiff asks, they would not be coerced by mandamus thus to act, unless they had theretofore been so requested, were then able to do it and should have done it, but had refused to comply with the request: Com. v. Cochran, 1 S. & R. 473, 474; Miller v. Henderson, 212 Pa. 263; Stegmaier v. Goeringer, 218 Pa. 499. In the last of these cases, it is said at page 503: "When a private relator seeks to compel by mandamus a public official to perform an alleged duty, the burden is on him to show that he has performed every prerequisite condition necessary to compel such action, and that it has been refused by the public official. This

is true whether the duty to be performed is ministerial or discretionary, for even if the duty is ministerial the private relator must show that he has placed himself in a position to legally demand the performance of the duty, and after making demand it was refused, before he is in a position to ask the intervention of the court to compel the performance of the alleged duty." Considering the essential nature of a mandamus, it is difficult to see how any other conclusion could possibly have been reached. Here, admittedly, no previous demand was ever made, and those cases, therefore, require the affirmance of the judgment under review.

We might well close our opinion at this point, but deem it wise to consider one other matter which was elaborately argued, is directly in issue, and is of great importance to the municipalities of the State. It is contended that because the controller did not specify in his return some particular objection to plaintiff's right to be paid for the Town Hall Site, he cannot object to a judgment being entered against him. This contention wholly overlooks the averments of the petition already quoted, and indicates moreover an inadequate conception of the duties of the controller. By section 349 of "The General County Law" of May 2, 1929, P. L. 1278, 1324, it is provided that "The controller shall scrutinize, audit and decide on all bills, claims and demands whatsoever against the county. All persons having such claims, *shall first present the same to the controller,* and, if required, make oath or affirmation before him to the correctness thereof. *The controller may, if he deems it necessary, require evidence by oath or affirmation of the claimant and otherwise that the claim is legally due,* and that the supplies or services for which payment is claimed have been furnished or performed under legal authority. He may inquire or ascertain whether any officer or agent of the county is interested in the contract under which any claim may arise, or has received or is to receive any commission, consideration or gratu-

ity relating thereto, or whether there has been any evasion of the preceding section of this act by making two or more contracts for small amounts which should have been in one. If he shall find that there has been any evasion, or that any such officer or agent is so interested, he shall refuse to approve the claims. All claims which he shall find legally due he shall certify to the commissioners.

"Section 350. The commissioners shall draw no warrant on the treasury for any debt, claim or demand whatsoever, not audited and approved by the controller as provided for in the foregoing section, except for the fees of jurors, witnesses, criers and tipstaves of the several courts of the county. ......

"Section 352. The treasurer shall pay no money out of the county treasury, except on warrants drawn by a majority of the commissioners, and countersigned by the controller."

It will be noticed from the foregoing, that important duties are vested in the controller for the protection of the funds of the county. The statute says that it was plaintiff's duty to "first present" its claim to the controller, before the latter was required to act upon it. Plaintiff's petition admits it never did this; hence the controller never was in default and was never subject to coercion by mandamus in regard to it. It is clear also that, if the claim had been presented, it would have been the controller's duty to investigate it, and to do this he would, of course, have been entitled to a reasonable time. Such an investigation is not to be perfunctory, nor is to be limited to an inquiry of the claimant. In his discretion, the controller may "require evidence by oath or affirmation of the claimant *or otherwise.*" He cannot be compelled by mandamus to exercise his discretion in a particular manner (Com. v. Cochran, 6 Binn. 456; Com. v. George, 148 Pa. 463); nor can the court later substitute its judgment for his, even though his may have been erroneous: Runkle v. Com., 97 Pa.

328; Souder v. Phila., 305 Pa. 1, 8. After the claim is presented to him, and after he has had a reasonable time to act upon it, mandamus may issue to compel him to act, but not until then. In the present case, the claim has not even yet been presented to him; hence the petition for a mandamus was premature, and could properly have been dismissed for that reason. Com. v. Phila., 176 Pa. 588, so greatly stressed by appellant, has no application to this case. There the controller claimed to extend his discretionary powers "to the revision of lawful contracts made by other departments within their proper sphere," which of course he had no right to do.

So, also, our decision in Sheets v. Armstrong, supra, is not res adjudicata as to the point now under consideration, which was not and admittedly could not have been therein considered. What thereby became res adjudicata were the reasons then alleged and those which, under the then existing circumstances, might have been alleged against the validity of the contract of sale; but the judgment could not adjudicate, actually or potentially, objections which could not possibly have been made at that time.

The judgment of the court below is affirmed.