Schenley Farms Company, Appellant, *v.*
Allegheny County.

Argued March 24, 1944. Before Maxey, C. J., Drew, Linn, Stern, Patterson, Stearne and Hughes, JJ.

*J. M. McCandless,* for appellant.

*Edward G. Bothwell,* with him *John J. O'Connell,* for appellee.

Opinion by Mr. Justice Drew, May 22, 1944:

The litigation, of which this suit is a part, has been in the courts for thirteen years. It is high time, in the interest of all concerned, that the controversy be terminated, and it is hoped the decision here will have that effect.

The Schenley Farms Company, plaintiff, brought this suit in assumpsit against the County of Allegheny, defendant, to recover $1,536,653.78, alleged to be due on a contract entered into by the parties hereto, for the sale to the county of certain land in the City of Pittsburgh for a site for a public auditorium. The property has been commonly known for years as the "Town Hall Site".

The question involved in this appeal is whether the court below erred in entering judgment for defendant upon its statutory demurrer to plaintiff's statement of claim, as amended and supplemented by leave of court after the original statement had been held insufficient in law upon a previous demurrer. The assignments of error are to the entry of the judgment, and to the sustaining of defendant's questions of law as to the maintainability of the action as one for recovery of a general judgment *in personam* as on a matured promise or a general liability to pay and also attacking the suit as dilatorily brought and, hence, not maintainable in any event.

This action is framed as a vendor's suit for recovery of a general judgment for the "purchase price" of land. The agreement upon which it is brought is dated March 19, 1931 (Exhibit "B", attached to the statement of claim), and provides that: "In consideration of the sum of One ($1.00) Dollar in cash paid by the County to the Farms Company" the latter agrees that it will convey to the county certain described land upon certain terms and conditions. The conveyance is to be made "for the consideration hereinafter mentioned", that being "a sum equivalent to eight ($8.00) Dollars, per square foot for each and every foot of area of said land, payable as set forth hereinabove." The "consideration for the land" is to be paid upon delivery of the deed.

Our first consideration is the contention of plaintiff that all the questions raised in the affidavit of defense are res judicata by reason of our decision in *Sheets v. Armstrong*, 307 Pa. 385, 161 A. 359. That was the first of a series of cases in which this agreement has been before our courts. An examination of the case will disclose the fact that the issues raised were "(1) That the price to be paid is grossly excessive; (2) that there was a bartering of the county's power of condemnation for the benefit of the Farms Company; (3) that the proposed building will, if erected, violate the zoning ordi-

nance of the City of Pittsburgh; (4) that the building will constitute a nuisance to the damage of the plaintiffs, owners of real estate in the vicinity; (5) that the site is inadequate and that a building for the uses intended cannot effectively function thereon; (6) that in agreeing to buy the property in question there was a gross abuse of administrative discretion by the commissioners; (7) that the contract permitted speculation in the real estate of others; and (8) that there will be a great waste of public money if the contract is carried out." We there determined the legality of the making of the agreement, but the decision did not adjudicate its construction, operation and effect, as between the parties thereto. See *Murphey v. C. I. T. Corp.*, 347 Pa. 591, 33 A.2d 16. The purpose of the case was to prevent the county from carrying out its contract with the Schenley Farms Company, and the issues before the court were entirely different from those now presented.

*Palmer's Appeal,* 307 Pa. 426, 161 A. 543, is also mentioned by plaintiff as res judicata of the matters contained in this appeal. There this Court affirmed a judgment of the Court of Common Pleas of Dauphin County upholding an approval by the Department of Internal Affairs of the increase in the debt of Allegheny County to be represented by the "Town Hall" Bonds mentioned in the agreement. Just what this has to do with the issues now raised we cannot understand. The judicial approval of the prospective bond issue has no materiality to plaintiff's cause of action. Certainly it did not operate as a command to sell the bonds.

In *Schenley Farms Co. v. McGovern,* 312 Pa. 67, 167 A. 779, which was a mandamus proceeding brought against the Commissioners, Controller and Treasurer of Allegheny County, it was sought to require the commissioners to issue and sell a sufficient number of bonds of Allegheny County ". . . to realize a sum sufficient to discharge its obligations to the plaintiff under the contract [for the purchase of the Town Hall Site] . . .,

commanding County Controller to approve the plaintiff's claim under the said contract and to countersign the said bonds and warrants in the amount aforesaid; and commanding County Treasurer to pay from the proceeds of the sale of said bonds the amount to which the plaintiff is entitled under the contract . . ." We approved the dismissal of that action primarily because the company failed to show that the county was legally bound to do that which the company sought to force the officials to do, or that they had been requested to do and had refused. We declined to issue the mandamus and ended our opinion with the following statement (p. 73) : "So, also, our decision in *Sheets v. Armstrong,* supra, is not res adjudicata as to the point now under consideration, which was not and admittedly could not have been therein considered. What thereby became res adjudicata were the reasons then alleged and those which, under the then existing circumstances, might have been alleged against the validity of the contract of sale; but the judgment could not adjudicate, actually or potentially, objections which could not possibly have been made at that time."

None of these cases, so far as we can discern, is res judicata of the questions of law raised in the instant case in the amended affidavit of defense. In this respect, therefore, the similar holding of the learned court below, in an able opinion by Judge A. MARSHALL THOMPSON, is correct.

Defendant contends that plaintiff cannot recover a general judgment against the County of Allegheny because the contract for the purchase of the property states in part, as follows: ". . . The Farms Company . . . agrees with the County . . ., that it will, on the day, or within a reasonable time thereafter, of the sale of the 'Town Hall' Bonds heretofore ordered sold by the Commissioners of Allegheny County for the purpose, inter alia, of providing funds to pay for the property hereinafter described, . . . convey unto the County in fee simple . . ." (A description of the property follows.) .

It is true that the contract definitely provides that the purchase price shall be paid out of the proceeds of a certain bond issue, which the agreement says had already been authorized. The statement of claim fails to aver any sale of said bonds in any amount in creation of any such fund whatsoever. The contract shows conclusively that it was the express understanding of the parties that the real estate was not to be conveyed or the purchase price paid until the "Town Hall" Bonds were issued and sold. The availability of the proceeds of the sale of these bonds in the treasury of the county was made a condition precedent to any right of recovery by the company. And it is well settled that when it is the agreement of the parties that plaintiff shall look to a particular fund alone, and not to the personal responsibility of defendant, neither law nor equity can change the agreement: *Chambers v. Jaynes,* 4 Pa. 39; *Mosser Co. v. Cherry River B. & L. Co.,* 290 Pa. 67, 138 A. 85. It is equally well established that if defendant specifically agrees to raise the fund and then refuses so to do, he will be held individually liable because of that refusal: *Scranton A. & S. Co. v. Scranton B. of T.,* 297 Pa. 26, 146 A. 139. But such is not this case.

On January 4, 1932, during the pendency of *Palmer's Appeal,* supra, and *Sheets v. Armstrong,* supra (decided May 9, 1932) before this Court, a new Board of County Commissioners (which had succeeded in office the Board that made the agreement) adopted a resolution declaring an express policy "to treat" the agreement "as null and void and of no legal effect whatsoever" and "never to use" the property therein described "for the erection thereon of a public auditorium". Plaintiff alleges this resolution to be a "breach" of the agreement, but claims no damages in consequence thereof. It maintains the agreement is still in force for the purpose of its present action for recovery of "the purchase price of the property." The commissioners on August 1, 1932, and at other times since have refused to accept a deed tendered to them by plaintiff.

We agree with the learned court below that the statement of claim fails to set forth adequate reasons why a contract, payable out of a special fund, has become a general obligation of the county. The contract provides that the consideration to be paid to plaintiff is to be derived from the sale of "Town Hall" Bonds, and plaintiff has no right to be paid except out of the proceeds of such bonds. This is the position taken by the county.

The conveyance of the real estate by the company and the payment of the consideration by the county were conditional to the extent of depending wholly and finally upon the fund derived by the county from the sale of the "Town Hall" Bonds. Such provision was not a limitation on the time of payment but was the condition of making it. We cannot find anything in this contract to even indicate a promise on the part of the county that a sale of the bonds would positively occur. All the parties provided for by their agreement was that for the sum of $1.00 the company agreed to convey the land to the county if and when the latter disposed of the bonds which it was contemplating selling. Obviously, then, the resolution of the county commissioners not to sell the bonds was legally justifiable, and the tender of the deed by the company was of no effect.

Another consideration protrudes here. As stated in the affidavit of defense: "Plaintiff is presumed by law to have known when it entered [into the contract] (a) that defendant's Board of County Commissioners then in office had the statutory right under the Act of April 13, 1927, P. L. 205, §2 [1] . . ., to abandon the issuance

---

[1] This section provides: "Whenever any such public corporation shall have been authorized by proceedings heretofore or hereafter had under the provisions of an act of Assembly, approved the twentieth day of April, one thousand eight hundred and seventy-four (Pamphlet Laws, sixty-five), and the amendments and supplements thereof, to increase its indebtedness to an amount exceeding two per centum upon the last preceding assessed valuation of the taxable property therein, with the assent of the electors thereof, and the

of said Bonds and that said Board was powerless in law to prevent a future abandonment thereof by any succeeding Board of County Commissioners of defendant County, and (b) that any succeeding Board of County Commissioners of defendant County had, has, and will in future have, said statutory right of abandonment. Wherefore, there is written into said contract a condition implied by law: viz., that performance of any duty upon defendant to pay the purchase price, or the imposition of any obligation whatsoever upon defendant by said contract, is conditional upon an actual sale of said Bonds and the creation of a special fund in the County treasury from the proceeds thereof. The Statement of Claim fails to aver the performance or occurrence of said implied condition."

Plaintiff's answer to this question of law is an attack upon the constitutionality of the Act of 1927 as applied to its contract of 1931, and we must admit we see no merit in the answer. A statute in force at the time of the making of a contract could not possibly be said "to impair the obligation" of the contract. That the constitutional inhibitions to which plaintiff refers operates only upon statutes enacted subsequently to the contractual obligation which could be impaired by such statutes is too clear to require argument.

The court below said "The Act of 1927 antedated by four years the execution of the contract now in issue. Contracts with public bodies are presumed to be made in view of the legislation then affecting such public bodies, and any such legislation becomes a part of the contract. When the agreement of sale involved here was

corporate authorities shall deem it for the public interest to abandon its power to increase its indebtedness thereunder, either in whole or in part, and, by their ordinance or resolution shall so provide, the power to increase its indebtedness thereunder, to the extent so abandoned, shall thereupon cease and determine, and the part so abandoned shall no longer be treated as a part of its indebtedness for any purpose whatsoever. No such abandonment shall effect any increase of indebtedness theretofore made under said power."

made on March 19, 1931, The Schenley Farms Company was bound to take notice of the Act of 1927, and it, therefore, cannot be successfully maintained that the Act of 1927 had the effect of violating a contract subsequently made with a municipal body": We think this statement unanswerable. See *Von Hoffman v. Quincy,* 4 Wall. 535; and *Home Bldg. & L. Assn. v. Blaisdell,* 290 U.S. 398, where Chief Justice HUGHES said (p. 435) : "Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order."

This suggests the question, apparently not raised below, whether this contract for the purchase of land is proprietory or governmental in character. We think it essentially governmental because the issuance or nonissuance of the bonds is made governmentally discretionary by the Act of 1927. It would seem it must be governmental since the then commissioners could not possibly bind their successors in office. If the contract were proprietory, its making would be a completed act, and the successors of the commissioners who acted would be bound by the contract executed before their term of office. "In the performance of sovereign or governmental, as distinguished from business or proprietory, functions, no legislative body, or municipal board having legislative authority, can take action which will bind its successors": *Com. ex rel. Fortney v. Bartol,* 342 Pa. 172, 175, 20 A. 2d 313, and cases there cited.

We conclude that the contract specifically provides for payment of the consideration out of a special fund, to be raised from the sale of "Town Hall" Bonds, and since the statement of claim does not set forth the existence of this fund, the sale of any bonds to create it, or anything to show a waiver of these conditions, so as to make the consideration payable out of the general funds of the county, no right of action is shown. The court below was correct in sustaining the questions of law

raised by the affidavit of defense and entering judgment for the county.

While there is much to indicate that this contract is in reality an option and not an executory contract of purchase and sale, and also that the company is guilty of laches in prosecuting its alleged claim, we deem it unnecessary, in the disposition we have made of the controversy, to consider and determine these matters raised by the county.

Judgment affirmed.