**HUTCHES v. RENFROE.**

**RENFROE v. HUTCHES.**

No. 13983.

United States Court of Appeals,
Fifth Circuit.

Dec. 8, 1952.

As Amended on Denial of Rehearing
Jan. 21, 1953.

338

William P. Dobbins, San Antonio, Tex., for appellant & appellee.

Oliver Brantley, Troy, Ala., for appellee & appellant.

Before BORAH, STRUM and RIVES, Circuit Judges.

BORAH, Circuit Judge.

Clarence F. Hutches brought this suit against J. W. Renfroe to recover damages for the alleged breach of two written contracts for the sale of pecans to the plaintiff.

The first contract was entered into on November 10, 1949. By the terms of this agreement the defendant agreed to sell and plaintiff agreed to buy a carload, 60,000 pounds, of average orchard run Alabama seedling pecans at the price of $17.50 per hundred pounds, f. o. b. Troy, Alabama, to be delivered on or before November 30, 1949. The second contract was entered into on November 11, 1949. By its terms, plaintiff agreed to buy and the defendant agreed to sell to the plaintiff another 60,000 pound carload of average orchard run Alabama seedling pecans at the price of $17.75 per hundred pounds, f. o. b. Troy, Alabama, delivery to be made on or before December 10, 1949. As to both contracts, the complaint alleges that defendant failed or refused to deliver the pecans as stipulated. In defense, the defendant claimed, among other things, that the contract was illegal in that it violated an order issued by the Secretary of Agriculture of the United States and certain orders and regulations of the Pecan Administrative Committee.

The court, trying the case without a jury, found that the contracts were valid; that the defendant never delivered and never offered to deliver pecans in accordance with the terms of the contract; and that the testimony failed to establish a mutual agreement between the parties to extend the time within which defendant could make the deliveries. The court concluded that plaintiff should recover damages from the defendant in the amount of $1,050 plus interest and entered judgment accordingly. Thereafter, contending that the court was in error in determining that the measure of plaintiff's damages from the breach of contract was the difference between the contract price and the price which the plaintiff would have received from resale of the pecans, and claiming that the proper measure of damages was the difference between the contract price and the market price at the time the pecans ought to have been delivered, the plaintiff moved the court to amend the judgment by re-assessing his damages. This motion was denied and plaintiff and defendant have appealed. The parties will be referred to as they appeared in the trial court.

The controlling questions presented by these appeals are (1) whether the contracts were illegal and, if not, (2) the measure of damages to which the plaintiff is entitled.

As to the first question, defendant contends that the contracts were illegal for the reason that they were in violation of Part 994 of Order No. 94 issued by the Secretary of Agriculture pursuant to the authority contained in 48 Stat. 31, as amended; 7 U.S.C.A. § 601 et seq., and the orders and regulations of the Pecan Administrative Committee adopted pursuant thereto. We do not at all agree.

The purpose of the order was to insure by prior inspection and certification, that only pecans which would meet certain grade requirements would reach the public consumers of unshelled pecans outside the production area of Georgia, Alabama, Florida, Mississippi and South Carolina. Part 994 did not absolutely prevent all movement outside the five-state production area of unshelled pecans which failed to meet the grade and size regulation, but made an exception in the case of unshelled pecans by providing that they may be "handled"[1]

---

[1] The word "handle" is defined in section 994.1(f) to mean to sell, ship, transport

(except as a common or contract carrier of unshelled pecans owned by another

for shelling or processing outside the area. The order provided in section 994.4(e) that in such instances and without regard to the inspection and certification requirements the pecans might be handled only if, prior to the handling, the handler had insured to the satisfaction of the Pecan Administrative Committee, as it might require, that he would comply with regulations prescribed by the Pecan Administrative Committee as safeguards. In turn, and in order to effectuate the provisions of section 994.4 (e), the Pecan Administrative Committee issued a regulation providing that no handler could ship unshelled pecans from points within the production area to points outside the production area except to shellers and processors who had established eligibility to receive such shipments by executing with the Committee a marketing agreement in the form prescribed.

The defendant contends (1) that the plaintiff was not a sheller or processor or agreement holder, and under penalty of law he was forbidden to sell, ship, transport, or in any other way place unshelled pecans in the stream of commerce from the production area to points outside thereof, except to an eligible sheller or processor who had executed the prescribed marketing agreement; (2) that under the contract it was the seller's duty to deliver the pecans to the carrier at Troy, Alabama, and to make a contract of shipment with the carrier for transportation of the pecans to the plaintiff in San Antonio, Texas in violation of the Secretary's order; and (3) that the contracts were invalid at their inception and could not be rendered otherwise by subsequent events.

■ We are no more impressed by this argument than was the trial judge. First of all, the argument is founded on the assumption that the contracts call for shipment of pecans by the defendant to the plaintiff in San Antonio, Texas. The contracts do not so provide. On the contrary,

each contract calls for delivery by the defendant f. o. b. Troy, Alabama, and if the defendant had purchased sufficient pecans to perform his contract and had made delivery to the plaintiff, title to the pecans would have passed to the plaintiff at Troy, which is within the five-state production area.

■ The legal effect of the order here involved is to prevent shipment of uninspected pecans from a point within the production area to an unqualified receiver at a point outside the production area. The order does not purport to control the handling of pecans within the production area nor was there an undisclosed agreement to violate the order. The facts clearly disclose that the pecans were ultimately to be shipped to consignee who had entered into agreements with the Pecan Administrative Committee and therefore, could legally accept the pecans. Without laboring the point further, we think that if a sale of uninspected pecans is made to a buyer for delivery f. o. b. a point in the production area, the buyer may resell the pecans to an authorized receiver if he wishes to ship them outside of the production area, or he may resell the pecans and deliver them to some other point within the area, but in either event, the buyer is obligated under a legal contract to take the pecans.

■ Defendant also contends that the trial judge erred in concluding that the time for delivery under the contracts was not extended by mutual agreement or conduct of the parties. Suffice it to say that the evidence clearly fails to establish a mutual agreement, by conduct or otherwise, to extend the time within which defendant could make deliveries and we agree with the court's finding that time was of the essence of the contracts. For the reasons stated, we hold that the court below did not err in concluding as a matter of law that the defendant had breached the con-

person), or in any other way to place unshelled pecans in the current of commerce from the production area to any point outside thereof, and a "handler"

means any person who either personally or through another person handles unshelled pecans.

tracts by failure to perform the conditions prescribed within the time expressly stated therein.

■ This brings us to a consideration of the second controlling question presented by this appeal, i. e., the proper measure of plaintiff's damages. So far as the measure of damages is concerned, it is clear that the extent of the wrong is measured by the difference between the market price and the contract price.[2] Accordingly we hold that the court erred in entering judgment in favor of plaintiff for only the difference between the contract price and the price for which plaintiff had agreed to resell the pecans. The defendant tacitly admits that this is so but insists that the plaintiff sued to recover lost profits and therefore, is in no position to complain of the trial court's action. We do not so construe the complaint.

■ In the complaint, plaintiff alleged that the defendant was indebted to him in the amount of $3,600 for damages for breach of contract entered into on the 10th day of November, 1949. Then after setting forth the terms of the contract and its breach, the following was alleged:

"* * * a 60,000 pound carload of Alabama seedlings would have brought $23.50 per one hundred pounds f. o. b. Troy, Alabama on November 30, 1949; that had the plaintiff received the pecans as specified under the terms of said contract he would have made a profit on the resale of said pecans in the amount of $3,600."

In respect to the contract of November 11, 1949, the complaint alleged that defendant was indebted to plaintiff in the sum of $3,750 for breach of contract and then after setting forth the terms of the contract and its breach, alleged that a 60,000 pound carload of Alabama seedling pecans would have brought $24.00 per one hundred pounds f. o. b. Troy on December 10, 1949 and that had plaintiff received the pecans he would have received a profit on their resale in the amount of $3,750.

The court below found that under the first contract plaintiff agreed to pay $17.50 per hundred pounds and under the second contract he agreed to pay $17.75 per hundred pounds; that the plaintiff entered into contracts to resell both carloads for a consideration of $18.50 per hundred pounds, f. o. b. Troy, Alabama; and that, therefore, the plaintiff was prevented from realizing a profit of one dollar per hundred pounds on the resale of the first 60,000 pounds of pecans and a profit of seventy-five cents per hundred pounds on the resale of the second 60,000 pounds, making a total loss of $1,050.00.

It seems to us that the pleadings, although not as clear as they might have been, were based on the market value theory of damages. The plaintiff plead the contract price, the market price, and asked for a money judgment which mathematically represented the exact difference between those two amounts, and at the trial all of plaintiff's witnesses testified as to market value of pecans, Troy, Alabama, on the date when delivery should have been made. However, be this as it may, we are in no doubt that plaintiff is entitled to the relief to which the proven facts entitle him, even though his own legal theory of relief may have been unsound. Federal Rules of Civil Procedure, rule 54(c), 28 U.S.C.A.; Truth Seeker Co. v. Durning, 2 Cir., 147 F.2d 54; Carter Oil Co. v. McCasland, 10 Cir., 190 F.2d 887; Gins v. Mauser Plumbing Supply Co., 2 Cir., 148 F.2d 974.

■■ But defendant claims that where as here, the plaintiff sues to recover lost profits he cannot put the court in error for accepting and deciding the issue as made, and secondly, that the court was not in error in denying plaintiff's motion to amend the judgment. Defendant argues that if plaintiff was dissatisfied with the amount of his recovery, his remedy was by motion for a new trial under Rule 59 of the Rules of Civil Procedure, 28 U.S.C.A., and not by motion to amend the judgment under

2. Reider v. Thompson, 5 Cir., 197 F.2d 158; Williston on Sales, Vol. 3, Sec. 599, p. 314, et seq.; Uniform Sales Act,

§ 67(3); Title 57, Sec. 73, Code of Alabama 1940.

Rule 59. As for the first point, it is the duty of the court to grant the relief to which the plaintiff is entitled, irrespective of the prayer for relief and the court's failure to apply the proper legal measure of damages was a manifest error of law. In regard to the second point, we think that perhaps the plaintiff should have used the motion for a rehearing under Rule 59(a) to call the error to the attention of the court. However, whether he should have proceeded under Rule 59(a) is unimportant. Surely, the parties are not to be hamstrung in the Federal courts by such trivial distinctions without differences. The important point is that the error was called to the attention of the trial court and it refused to grant the relief to which appellant was entitled.

For these reasons, the judgment of the court is reversed as to damages and the case remanded to the district court with a direction to make specific findings of market value, and to enter judgment for the difference between the contract price and the market value, together with interest and costs.

Reversed in part and remanded.