PAN AMERICAN REALTY TRUST
v.
TWENTY ONE KINGS, INC.

DeLEO ASSOCIATES COMPANY
v.
TWENTY ONE KINGS, INC.

District Court, Virgin Islands.
April 29, 1968.

Ronald H. Tonkin, James, Hodge & Tonkin, Christiansted, St. Croix, V. I., for plaintiffs.

John D. Marsh, Christiansted, St. Croix, V. I., for defendant.

MARIS, Circuit Judge (sitting by designation):

These cases were consolidated for trial since the asserted claims arise from interrelated contracts, involve the same defendant and raise common questions of law and fact. Rule 42(a), Federal Rules of Civil Procedure. One of the suits was brought by the plaintiff, DeLeo Associates Company, at No. 90–1966 against the defendant, Twenty One Kings, Inc., to recover $39,067.65 allegedly due under a contract to perform professional architectural services and for expenses incurred in connection with a building which the defendant proposed to construct upon its premises located at 47 B & C Company Street, Christiansted, St. Croix. The other suit was brought by the plaintiff, Pan American Realty Trust, at No. 89–1966 against the defendant, Twenty One Kings, Inc., to recover $33,885.14 allegedly due plaintiff for certain services performed under a contract for the construction of that building and for expenses incurred by the plaintiff in connection with the proposed construction.

Following the trial to me without a jury on January 24 and 25, 1968, I orally rendered my findings of fact and conclusions of law. I found in No. 90–1966 that the plaintiff, DeLeo Associates Company, was entitled to recover under the architectural contract a fee for architectural services together with reimbursable expenses, in the aggregate amount of $30,196.75. In No. 89–1966 I found that the plaintiff, Pan American Realty Trust was entitled under the construction contract to recover a fee as contractor, for engineering services and for expenses incurred, in the aggregate amount of $27,823.14. I directed that judgments be entered in these amounts, respectively, with interest from April 12, 1966, costs,

and an attorney's fee of $2,500.00 in each case. On February 5, 1968 judgments were entered accordingly.

Before me now are motions for reconsideration and modification of judgment filed by the defendant in each of these cases, on which argument has been had. The defendant does not attack the findings of fact in respect to the amounts found owing by defendant but in each case seeks a judgment in its favor on the ground that my interpretation of the two contracts involved was inconsistent with the evidence and the plain terms of the contracts. The defendant also urges that I erred in awarding counsel fees in these actions without the submission of any proof that an obligation to pay counsel fees had been incurred by the plaintiff and without proof of the value of the services rendered by the plaintiff's counsel.

The plaintiff contends that the defendant's motions for reconsideration and modification of the judgments were not properly filed as they were in reality motions for a new trial under Rule 59(a) of the Federal Rules of Civil Procedure. It is true that a motion for reconsidera-

tion and modification of judgment is not the proper motion to challenge the findings and judgment entered in a case such as these. But if the judgments entered were erroneous, they should be corrected even though technically the motions were mislabelled. It is a settled principle that a party is not bound at his peril to give the proper nomenclature to his motion. So long as he makes a timely motion which states good grounds for relief by motion, the court will entertain it and grant relief if appropriate. Hutches v. Renfroe, 5 Cir. 1953, 200 F.2d 337, 341; United States v. Caruso, 3 Cir. 1959, 272 F.2d 799, 800; Gainey v. Brotherhood of Railway & Steamship Clerks, etc., 3 Cir. 1962, 303 F.2d 716, 718; 6A Moore's Federal Practice, 2d ed., pp. 3877–3878. It is undisputed that the motions were timely filed. The motions filed by the defendant will accordingly be treated as motions for a new trial under Rule 59(a).

The architectural contract involved in No. 90–1966 provided for a professional fee not to exceed $15,000.00, plus reimbursable expenses as defined in Article IV,[1] for "the services of the Architect

---

1. "IV THE ARCHITECT'S EXPENSE

   1 Direct Personnel Expense includes that of principals and employees engaged on the Project including architects, engineers, designers, job captains, draftsmen, specification writers, typists and project representatives, in consultation, research, designing, producing drawings, specifications and other documents pertaining to the Project, and services during construction at the Project site. Employees' time shall be at their regular rates of pay.

   2 Expense of consultants shall include expenses and fees for structural, mechanical and electrical engineering and for other specialized work and equipment.

   3 Reimbursable Expense includes actual expenditures made by the Architect in the interest of the Project for the following incidental expenses: (a) Expense of transportation and living of principals and employees when traveling in connection with the Project; long distance calls and telegrams; reproduction of drawings and specifications, excluding duplicate sets at each phase for the Owner's review and approval; and fees paid for securing approval of authorities having jurisdiction over the Project.

   (b) If authorized in advance by the Owner, overtime work * * *."

   "A sum of $500.00 is accepted as a down payment which shall be the only funds paid to the Architect. The Architect is to complete the building drawings and complete specification and deliver at least three copies to the owner within six weeks more or less from the date hereof. The remaining amount due the Architect is to be added to the cost of the building contract and paid in a manner to be agreed on in said contract. The architect shall design the building and obtain a permit from Public Works Dept. according to schedules submitted by owner."

to prepare a complete set of plans and specifications for a building located at 47 B & C Company St. hereinafter called the Project." The contract further provided that under Article II the contract provided that the owner should cover the expense of certain matters which the architect would be required to take care of in the way of surveys, zoning matters and various other matters of that nature, test borings to determine subsoil conditions, et cetera.[2]

The architectural contract was on the standard form of agreement between owner and architect prepared by the American Institute of Architects, and was entered into by the plaintiff DeLeo Associates Company and Raffaele M. M. DeLeo, described therein as "Architect", with defendant Twenty One Kings, Inc., described therein as "Owner", under date of February 26, 1965.

Under the evidence I found that the plaintiff architect had prepared plans, detailed drawings and specifications as were required and needed for the performance of the work and had fully completed its agreement with respect to those matters. Subsequently, on August 4th or 5th, 1965, certain changes in the work were required by the defendant which made necessary a substantial amount of additional architectural work in order to change the plans and working drawings to meet the changed arrangements which the owner desired. The defendant made certain payments to the plaintiff architect totaling $5,246.00 which included the $500.00 paid on the architectural fee

at the inception of the arrangement. The building for which these plans, specifications and working drawings were prepared had not been commenced or erected at the time of suit or at the time of trial. This, however, was not due to any fault on the part of the plaintiff architect. But since the plaintiff had thereby been prevented from performing that part of its agreed services which involved receipt of bids and supervision of construction I concluded that the defendant was entitled to a credit of 25 percent on the $15,000.00 architectural fee. I accordingly concluded that the plaintiff architect was entitled to a fee of $10,875.00. In respect to expenses reimbursable under the architectural contract, I found that the architect had incurred expenses under Article II amounting to $1,548.80; that expenses had been incurred under Article IV amounting to $12,197.95, and that additional expenses had been incurred as a result of the order for a change in design of the building which the defendant gave the architect amounting to $10,821.00. The total was $35,442.75, on which the defendant was entitled to a credit for its $5,246.00 payment, leaving $30,196.75 as the amount due to the plaintiff architect in No. 90–1966.

The defendant in its motion in No. 90–1966 does not attack the findings in respect to the reimbursable expenses, but contends that the finding that the plaintiff architect is entitled to payment for architectural services is in direct conflict with the terms of the architectural

2.  "II THE OWNER'S RESPONSIBILITIES

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

3   He shall furnish or direct the Architect to obtain at the Owner's expense, a certified survey of the site, giving, as required, grades and lines of streets, alleys, pavements, and adjoining property; rights of way, restrictions, easements, encroachments, zoning, deed restrictions, boundaries, and contours of the building site; locations, dimensions, and complete data pertaining to existing buildings, other improvements and trees; full information as to available service and utility lines, both public and private; and test borings and pits necessary for determining subsoil conditions.

4   He shall pay for structural, chemical, mechanical, soil mechanics or other tests and reports if required.

5   He shall arrange and pay for such legal and auditing services as may be required for the Project. \* \* \* "

contract which specifically provided that the $500.00 accepted by the plaintiff architect as a "down payment \* \* \* shall be the only funds paid to the Architect", and that the "remaining amount due the Architect is to be added to the cost of the building contract and paid in a manner to be agreed on in said contract."

The building contract thus referred to is involved in No. 89–1966. It was dated December 3, 1965 and there were two riders or endorsements which were made part of the contract. In that contract, which was prepared on the standard form of agreement between owner and contractor issued by the American Institute of Architects, it was agreed that the basis of payment for the construction of the building would be the cost of the work plus a fee of $35,000.00. The cost was to be reimbursed as provided under Article 6; the work to be completed in approximately eight months. One of the riders to the building contract, which bore the same date as the contract, provided that:

"In consideration of the mutual promises flowing between the parties hereto and the consideration in the main contract it is mutually agreed as follows:

"1. The contractor agrees to supply all additional funds needed to complete the job that is not raised by a first mortgage.

"2. As security for said funds so advanced the contractor agrees to accept and the owner agrees to execute a second mortgage for the amount so advanced. Said second mortgage shall bear interest at same percent charged by bank and be payable at $300.00 per month, inclusive of interest, for a period of five (5) years. Said mortgage may be prepaid at any pay period in multiples of $300.00, without penalty.

"3. Said mortgage shall be executed and delivered at the completion of the job when it has been determined what the amount of the mortgage is to be. Also, said mortgage will be executed and delivered after the bank has executed and filed its mortgage.

"4. The contractor agrees to retain William C. Raines during the duration of this job for coordinating and doing legal work. The salary for said William C. Raines shall be $200.00 per month, and is to commence upon notice by William C. Raines to the contractor.

"5. Since bank funds will not be released until the job has progressed to a certain stage, it is agreed by the contractor that the [sic] funds to be advanced as herein outlined shall be advanced at the beginning of the job.

"6. The contractor agrees to proceed with this job immediately."

The second rider to the building contract was added to it under date of December 8, 1965. This rider was obviously intended to implement the agreement which the defendant had entered into with the architect that the remaining amount of the fee due the architect was "to be added to the cost of the building contract and paid in a manner to be agreed on in said contract." The provisions of this rider were as follows:

"WHEREAS: under an agreement dated February 26, 1965, 21 KINGS, INC., as owner retained as architect, DeLeo Associates Company and Raffaele M. DeLeo to prepare a complete set of plans and specifications for a building located at 47 B & C Company St., Christiansted, St. Croix, U. S. Virgin Islands, and

"WHEREAS: the parties under said contract, dated February 26, 1965, agreed that the architect's fee shall not exceed $15,000.00 and the architect was paid $500.00 more or less of this leaving a balance of $14,500.00 more or less.

"WHEREAS: the parties under said contract dated February 26, 1965, agreed that the remaining amount due the architect shall be added to the cost of the building contract and paid in manner to be agreed on in said contract, and

"WHEREAS: there are also other monies due the architect under Article II, The Owner's Responsibilities and Article IV, The Architect's Expense;

"Now, Therefore: In consideration of the mutual promises between the parties hereto, 21 KINGS, INC., as owner and PAN AMERICAN REALTY TRUST, as contractor, and the consideration in the main contract it is mutually agreed as follows:

"1. The owner, 21 KINGS, INC., shall pay to the architect all monies due as of this date, during construction. First monies paid by financial institution financing construction shall be allocated to architect's fees.

"2. Monies due shall include the balance of the architect's fee and those amounts now due under Articles II and IV of the Agreement dated February 26, 1965, and referred to above.

\* \* \* \* \*

"4. The contractor shall commence with the work under the main contract without undue delay."

Under the evidence presented at the trial it was established that although applications had been made by the defendant both to the Virgin Islands National Bank and the First Federal Savings and Loan Association of Puerto Rico for a first mortgage loan on this project no commitments were ever obtained and a first mortgage loan was never secured as contemplated by the contractual documents. Under date of April 12, 1966 the defendant by letter to the plaintiff contractor unilaterally cancelled the building contract. Prior to that date, however, the contractor had proceeded to undertake preliminary work under the contract by way of locating materialmen and lining up equipment and attending to various other matters that needed to be done before actually purchasing materials and proceeding with the construction. I found that the expenses on these accounts for which the plaintiff Pan American Realty Trust was entitled to reimbursement were: $6,618.-00 for engineering services (1103 hours at $6.00 per hour); and $19,805.14 for other expenses incurred in the preliminary work in connection with the building contract, a total of $26,423.14. I disallowed the plaintiff's claim for a fee of $35,000.00, allowing only 4 per cent of that amount or $1,400.00 since the plaintiff, albeit through no fault of its own but due primarily to the fact that the defendant was unable to secure a first mortgage, had performed only about 4% of the work contracted for. I accordingly concluded in No. 89–1966 that the plaintiff Pan American Realty Trust was entitled to recover a fee in the amount of $1,400.00 together with reimbursement of its expenses amounting to $26,423.14, a total of $27,823.14.

At the trial the defendant raised the defense that the plaintiff Pan American Realty Trust had agreed to supply "at the beginning of the job" "all the additional funds needed to complete the job that is not raised by a first mortgage" and that since, as the defendant alleged, the plaintiff had breached its agreement to do so, the defendant was not obligated to pay any of the sums claimed by the plaintiffs, either to the architect for architectural services and expenses or to the contractor for the amounts earned and expended by it under the building contract. In support of this contention the defendant relied upon paragraphs 1 and 5 of the December 3d rider which I have quoted above. This argument I rejected at the trial as wholly lacking in merit. Reconciling, as best I could, the provisions of the building contract and its riders I concluded that until the owner had secured a commitment for a first mortgage loan the contractor was not obligated to advance the additional funds beyond that loan which would be needed to complete the building contract. For, until that event occurred, it would not be possible to know what amount of additional funds would be needed. But, if and when, a first mortgage commitment was secured the plaintiff contractor could know exactly how much additional money had to be put up and then could proceed to do so.

The defendant in its motion in No. 89–1966 asserts basically the same argument which had been rejected at trial, namely, that under the terms of the building contract and the riders thereto the plaintiff contractor had agreed at the outset to furnish the initial funds required for the construction of the building and to proceed with the job immediately. The defendant contends that the finding that such obligation was contingent upon the defendant obtaining a commitment for a first mortgage loan is in conflict with the plain terms of the contract and is not supported by any competent evidence.

As will be seen, the main thrust of the defendant's motion is that I misinterpreted the agreements and that my findings and conclusions upon which the judgments rest conflict with the plain terms of those documents. A cardinal principle governing the construction of contracts is that the entire contract must be considered and, as between possible interpretations of ambiguous provisions, that will be chosen which best accords with the sense of the remainder of the contract. A written contract is to be construed so as to give effect to all of its parts, and any construction which would render the agreement meaningless should be avoided.[4] Fleischman v. Furgueson, 1918, 223 N.Y. 235, 119 N.E. 400; Rentways, Inc. v. O'Neill Milk & Cream Co., 1955, 308 N.Y. 342, 126 N.E.2d 271; Stoner v. Bellows, 3 Cir. 1952, 196 F.2d 918, 921; Restatement, Contracts, §§ 235, 236. As I have indicated, the defendant contends that under the terms of the building contract and the riders thereto the plaintiff contractor agreed as a condition precedent to furnish initially funds for the construction of the building and agreed to proceed with the job immediately. It is crystal clear, however, that the contractual documents contemplated that defendant would procure a first mortgage commit-ment. The parties set out in the rider of December 3d that since bank funds would not be released until the job had progressed to a certain stage it was agreed by the plaintiff contractor that it would advance funds at the beginning of the job. But this must have contemplated that at the beginning of the job there would be bank funds which had been committed even though not to be released until a later stage in the construction. The contractor also agreed to supply all additional funds needed to complete the job which were not raised by a first mortgage for which, as security, the defendant agreed to execute a second mortgage for the amount so advanced. Obviously this contemplated the prior existence of a first mortgage. I adhere to my conclusion that these obligations of the contractor were conditioned upon the prior procurement by the defendant of a commitment for a first mortgage loan. To accept the defendant's view would be to render the contract unworkable and meaningless. The defendant, having been unable to secure the contemplated first mortgage commitment, did not perform its part of the contract, and thereby discharged the plaintiff from the duty of further performance by the impossibility of rendering it. Section 468(1) of the Restatement, Contracts, provides:

"468. Rights of Restitution.

(1) Except where a contract clearly provides otherwise, a party thereto who has rendered part performance for which there is no defined return performance fixed by the contract, and who is discharged from the duty of further performance by the impossibility of rendering it, can get judgment for the value of the part performance rendered, unless it can be and is returned to him in specie within a reasonable time."

See, for example, Patterson v. Marchese, 1960, 10 A.D.2d 639, 196 N.Y.S.2d 903;

---

4. The contracts here involved were executed in New York. Accordingly the stated rule, which is the law in New York as well as in the Virgin Islands, governs their interpretation. Restatement, Conflict of Laws, § 346.

M. Ahern Co. v. John Bowen Co., 1956, 334 Mass. 36, 133 N.E.2d 484; West v. Peoples First Nat. Bank & Trust Co., 1954, 378 Pa. 275, 285–286, 106 A.2d 427, 433. Furthermore, the plaintiff contractor, upon notification from the defendant under date of April 12, 1966 to "do nothing further under the provisions of this contract" was entitled to treat the contract as absolutely and finally broken by the defendant. Mobley v. New York Life Ins. Co., 1935, 295 U.S. 632, 638, 55 S.Ct. 876, 79 L.Ed. 1621. It is an accepted principle that a building contractor who is wrongfully forbidden to complete his work may treat the contract as rescinded and maintain an action of quantum meruit for the services and material furnished in the construction of the building. Valente v. Weinberg, 1907, 80 Conn. 134, 67 A. 369, 13 L.R.A.,N.S., 448; United States for Use of Susi Contracting Co. v. Zara Contracting Co., 2 Cir. 1944, 146 F.2d 606, 610; Restatement, Contracts, § 346. Accordingly upon the defendant's recission of the construction contract the plaintiff was entitled to recover the money it had actually expended and for the services it had actually performed.

Turning to the merits of the defendant's motion in No. 90–1966, the defendant contends, as I have stated, that the agreements contemplated that the sum of $500.00 only would be paid under the architectural contract. It is true that the contract did provide that the remaining architect's fee would be added to the cost of the building contract. It is also true that the rider of December 8th to the building contract provided in paragraphs 1 and 2 that the defendant "shall pay to the architect all monies due as of this date, during construction. First monies paid by financial institution financing construction shall be allocated to Architect's fee. * * * Monies due shall include the balance of the architect's fee and those amounts now due under Articles II and IV of the agreement dated February 26, 1965." But I cannot agree that the provisions that the remaining architect's fee be added to the cost of the building contract relieved the defendant of liability to pay the architect's fee, and the expenses incurred under the architectural contract.

It has been held that ordinarily when it is the agreement of the parties that the plaintiff shall look to a special fund alone for payment and not to the personal responsibility of the defendant, there can be no further recovery when the fund is exhausted. But where a debtor specifically agrees to raise a particular fund and then fails to do so, he may be held individually liable; for the mere fact that the parties expect that payment will be made from a particular fund which he is to raise does not relieve him from liability if he fails to raise it. Restatement, Contracts, § 455; Nunez v. Dautel, 1873, 86 U.S. (19 Wall) 560, 562, 22 L.Ed. 161; William F. Mosser Co. v. Cherry River Boom & Lumber Co., 1927, 290 Pa. 67, 73–74, 138 A. 85, 88; Scranton Axle & Spring Co. to Use of Spruks v. Scranton Board of Trade, 1929, 297 Pa. 26, 32, 146 A. 139, 141; Schenley Farms Co. v. Allegheny County, 1944, 349 Pa. 637, 642, 37 A.2d 554, 557; Annotation 148 A.L.R. 1075. Compare Wise v. DeWerd, 3 Cir. 1966, 358 F.2d 389, 393–394, 5 V.I. 493, 502–503.

The defendant does not dispute the findings that the plaintiff architect had performed under the architectural contract so much as it was able to do and that it had incurred expenses thereunder. Clearly under the building contract the defendant was obligated to secure a first mortgage loan to finance the construction, including the architect's fee and expenses, and, although it made some efforts, failed to do so. It follows that the provision in the architectural contract that the balance of the architect's fee should be added to the cost of the building and paid in a manner to be agreed on in the building contract did not preclude the architect from recovery under the architectural contract. I find the defendant's motion in No. 90–1966 to be without merit.

Finally, the defendant contends that in both cases it was error to award counsel fees without the submission of proof that an obligation to pay counsel fees had been incurred by the plaintiffs and without proof of the value of the services rendered by counsel. The law, however, does not impose such a burden upon the prevailing party. The authority to allow attorney's fees in a civil action is statutory. 5 V.I.C. § 541. The amount to be awarded is wholly within the discretion of the judge before whom the case has been tried and who is, therefore, familiar with the work involved and the services rendered. Smith v. Government of the Virgin Islands, 3 Cir. 1966, 361 F.2d 469, 5 V.I. 536. Upon consideration of the nature and course of the litigation here involved it was my considered opinion that an award to the plaintiff in each case in the amount of $2,500.00 for attorneys' fees would be equitable and just under the circumstances. To that opinion I adhere.

Orders will be entered denying the motions in each case.