Lincoln P. TANG HOW, d/b/a Tang How Brothers, General Contractors, Plaintiff–Counterclaim Defendant–Appellee,

v.

EDWARD J. GERRITS, INC., Defendant–Counterclaimant, Third Party Plaintiff–Appellant,

v.

GUARDIAN INSURANCE COMPANY, Third–Party Defendant.

Nos. 90–5712, 91–5115.

United States Court of Appeals, Eleventh Circuit.

May 14, 1992.

---

John H. Gregory, Welbaum, Zook & Jones, Coral Gables, Fla., for Edward J. Gerrits, Inc.

George W. Cannon, Jr., Law Offices of Ross and Cannon, Frederiksted, St. Croix, U.S.V.I., for Tang How.

Before HATCHETT and EDMONDSON, Circuit Judges, and HILL, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this construction dispute involving conflict of laws questions, we affirm the district court's ruling that the appellee could recover damages for work performed on a *quantum meruit* theory and recover attorney's fees under the written contract, although the appellee did not complete the work the contract required.

## I. FACTS

Edward J. Gerrits, Inc. (Gerrits), a Florida construction corporation, managed the construction of a junior high school in St. Croix for the government of the Virgin Islands. Lincoln Tang How, a resident of the United States Virgin Islands, doing business as Tang How Brothers, General Contractors (Tang How) served as a subcontractor for the school's steel erection work. Gerrits and Tang How entered into an oral agreement whereby Tang How would perform steel work on the project and cure the original steel erector's defects. Later, Gerrits and Tang How entered into written contracts for the performance of plaster and decorative block work which consisted of the written contract, the contract drawings, and the specifications. Additionally, the written contract required Tang How to obtain a performance bond without which the contracts would be void. The contract also contained a forum selection clause which named the Southern District of Florida as the proper forum. On February 19, 1988, Gerrits forwarded the executed contract to the Virgin Islands government.

Gerrits and Tang How also entered into an oral contract for the correction of the previous contractor's plaster work. The plaster contract required a one-half inch plaster system applied in a three-coat process to a metal lath. Tang How exceeded the contract's anticipated plaster amount and requested an increase in funds for the extra plastering materials and labor. Gerrits instructed Tang How to continue the work and submit change orders for the extras. Although Tang How received approval for the change orders from Gerrits for extra plastering and was instructed on how to correct areas needing plaster, Gerrits did not pay Tang How for the extra plastering, labor, or materials. In addition, Tang How did not receive payment for the additional steel work, repair work, or block work. Nevertheless, Gerrits promised payment and insisted that Tang How continue the work.

On or about April 6, 1988, an architect from Frank Blaydon and Associates, the assistant commissioner of public works for the Virgin Islands government, and a Gerrits representative inspected the project and rejected Tang How's plaster work because of excessive cracking, improper curing, and improper application of the coating process. Tang How repaired cracks in three of the six buildings which comprised the project, and both Gerrit's superintendent and the government inspector accepted the work.

Under the block installation contract, Gerrits required Tang How to install eighteen blocks in a space that was too small to accommodate that many blocks. Although Tang How requested that alterations be made to install the blocks, Gerrits refused to allow any alterations and rejected Tang How's block work.

Throughout the project, the Virgin Islands government was extremely late in making payments. Gerrits and Tang How discussed the government's late payments, and Gerrits even threatened to suspend the work until the Virgin Islands government brought its payments current. Although Gerrits advanced Tang How $25,000 in

March, 1988, in a meeting held on April 9, 1988, Tang How informed Gerrits that it needed payment in order to continue the work. Gerrits then promised Tang How an advancement of an additional $25,000 to continue the work, but payment was never made. Subsequently, Tang How reduced its work force to one-quarter of the regular size, and after making numerous payment requests, it left the job on May 6, 1988. As of May 6, 1988, the Virgin Islands government had not released any funds for the payment of Tang How's work.

## II. PROCEDURAL HISTORY

On May 5, 1988, Tang How filed this lawsuit against Gerrits in the Virgin Islands, Division of St. Croix, pursuant to 48 U.S.C.A. § 1612(a, b) alleging breach of contract. Based upon the forum selection clause of the contract, the District Court of the Virgin Islands granted a change of venue and transferred the action to the United States District Court for the Southern District of Florida which had subject matter jurisdiction on the basis of diversity of citizenship under 28 U.S.C.A. § 1332. Gerrits filed its answer, affirmative defenses, and counterclaim to Tang How's complaint denying that any money was due and alleging that Tang How breached its contract by: (1) failing to perform in accordance with the contract documents; (2) performing defective work; and (3) abandoning the project. In its counterclaim, Gerrits sought damages against Tang How for the cost to correct and repair Tang How's defective work. Tang How denied the material allegations of Gerrit's counterclaim and set forth certain affirmative defenses.

On August 8, 1989, the court granted Tang How leave to amend its complaint to allege a *quantum meruit* theory. Additionally, the court ruled that the contracts between the parties were valid as a matter of law, based on the admissions of the parties. Later, Gerrits filed a motion for partial summary judgment on Tang How's *quantum meruit* claim. The district court denied the motion and ruled that a contractor wrongfully forbidden to complete its work may rescind a valid contract and maintain an action for *quantum meruit.*

During the jury selection process, Tang How exercised its peremptory challenges to exclude three prospective jurors from the fifteen-person jury venire. Gerrits also attempted to exercise its peremptory challenges to exclude two African–American females and one Latin–American female. Tang How objected to the challenges on the grounds that Gerrit's actions were racially motivated, and an improper attempt to exclude an identifiable group. Gerrits offered a neutral explanation as to one juror, and the district court honored the challenge as to that juror. The district court, however, denied Gerrit's request to strike the other African–American female because Gerrits could not offer a neutral explanation.

At the close of Tang How's case, and at the close of all the evidence, the district court denied Gerrits's motions for directed verdict. The jury found that Gerrits breached its oral and written contracts with Tang How by wrongfully preventing Tang How from completing the work. Consequently, the jury awarded Tang How $147,098 as *quantum meruit* damages for the reasonable value of the work performed in a sound and workmanlike manner. Additionally, the jury found that Tang How breached its contracts with Gerrits and awarded Gerrits $25,000.

Following trial, Tang How filed a motion for attorney's fees in the amount of $53,100 and costs in the amount of $41,469.69. The district court referred the attorney's fees and cost issue to a United States Magistrate Judge who, after hearing testimony and argument on the issue of Tang How's entitlement to attorney's fees and costs, issued a report and recommendation, recommending $47,650 for attorney's fees and $5,463.30 for costs. The district court adopted the magistrate judge's report and recommendation. 756 F.Supp. 1540 (S.D.Fla.1991).

Following the verdict, the district court denied Gerrits's motion for judgment notwithstanding the verdict or for new trial, finding that substantial evidence existed to

support the jury's verdict. Additionally, the district court held that the jury's damage award was consistent with the evidence presented at the trial and that no basis existed for upsetting the jury's calculation of damages. The district court also denied the motion for new trial based upon the court's inclusion of the juror Gerrits sought to exclude.

## III. ISSUES

Gerrits raises the following issues: (1) whether the trial court committed reversible error in permitting Tang How's *quantum meruit* claim to go to the jury; (2) whether substantial evidence exists supporting the jury's finding that Gerrits wrongfully prevented Tang How from completing the work; (3) whether the court erred in denying Gerrit's right to exercise its peremptory challenge; (4) whether the evidence and the law supports the jury's damage verdict; (5) whether the court committed reversible error in permitting Tang How to introduce testimony and opinions regarding the contract language and prior contract negotiations; (6) whether the court erred as a matter of law in awarding Tang How attorney's fees under the contract where Tang How elected at trial to proceed under its *quantum meruit* claim and not under the contract; (7) whether the court abused its discretion in determining that the fee awarded to Tang How was reasonable; and (8) whether the trial court abused its discretion as to the costs awarded Tang How.

## IV. CONTENTIONS

To counter Gerrit's contentions, Tang How contends that the district court correctly ruled on the contract issues. Additionally, Tang How contends that it did not waive its rights under the contract and should not be estopped from seeking attorney's fees under the contract due to the election of a *quantum meruit* theory of recovery. Alternatively, Tang How contends that if Gerrits is correct that Tang How's election to recover under *quantum meruit* bars it from collecting attorney's fees under the contract, it should be noted

that in lawsuits before the district court of the Virgin Islands, attorney's fees are recoverable under Title 5 of the Virgin Islands Code, § 541. Tang How contends that the district court did not abuse its discretion in determining that the fee awarded was reasonable. According to Tang How, although items such as costs of transcripts and witness and attorneys' travel expenses are not usually taxable as costs, where they are absolutely necessary, such costs and expenses have been allowed.

## V. DISCUSSION

■ In its amended complaint, Tang How asserted a claim for breach of contract and sought to recover under a theory of *quantum meruit.* The district court had to determine whether the law of Florida or the law of the Virgin Islands governed Tang How's ability to recover from Gerrits. The Supreme Court held in *Erie Railroad Co. v. Tompkins* that the substantive law to be applied when federal courts exercise jurisdiction on the grounds of diversity of citizenship is the law of the state as declared by its legislature or its courts, except in matters where the federal Constitution or congressional acts govern. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), *construed in Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). The Supreme Court reached this holding in order to avoid or eliminate the inequitable administration of the law which permitted the character or result of litigation to materially differ depending upon whether the plaintiff brought the lawsuit in a federal or a state court. *Erie*, 304 U.S. at 78, 58 S.Ct. at 822. Additionally, the Supreme Court's holding in *Erie* discourages "forum shopping." *Erie*, 304 U.S. at 78, 58 S.Ct. at 822. The Supreme Court also advised the courts of appeals to apply the policies of *Erie* when reviewing decisions of the territorial courts. *See Waialua Agricultural Co. v. Christian*, 305 U.S. 91, 109, 59 S.Ct. 21, 30, 83 L.Ed. 60 (1938).

In *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), the Supreme Court noted that

"the prohibition declared in *Erie* against such independent determinations by the federal courts extends to the field of conflicts of laws." *Klaxon*, 313 U.S. at 496, 61 S.Ct. at 1021 (citations omitted). The Supreme Court reasoned that the conflict of law rules federal courts apply must conform to those prevailing in the courts of the state where the federal court is located in order to prevent the accident of diversity from disturbing the equal administration of justice in coordinate state and federal courts sitting side-by-side. *See Klaxon*, 313 U.S. at 496, 61 S.Ct. at 1021. Thus, the United States District Court for the Southern District of Florida had to apply the conflict of law rules of the state of Florida in determining whether the law of Florida or the law of the Virgin Islands governed Tang How's ability to recover from Gerrits.

■ Under the traditional conflict of law rule in Florida, it is well settled that "matters bearing on the validity and substantive obligation of contracts are determined by the law of the place where the contract is made (*lex loci contractus*)." *Jemco, Inc. v. United Parcel Service, Inc.*, 400 So.2d 499 (Fla.3d D.C.A.1981), *review denied*, 412 So.2d 466 (Fla.1982). Since the contracts between Gerrits and Tang How were made in and were to be performed in the Virgin Islands, Virgin Islands law determines matters bearing on the validity and substantive obligations of the contracts. *See Jemco*, 400 So.2d at 501. The law of the Virgin Islands is that

> [e]xcept where a contract clearly provides otherwise, a party thereto who has rendered part performance for which there is no defined return performance fixed by the contract, and who was discharged from the duty of further performance by the impossibility of rendering it, can get judgment for the value of the part performance rendered, unless it can be and is returned to him *in specie* within a reasonable time.

*Pan American Realty Trust v. Twenty One Kings, Inc.*, 297 F.Supp. 143, 149–50 (D.V.I.1968), *aff'd*, 408 F.2d 937 (3d Cir. 1969). Virgin Islands law provides for *quantum meruit*.

The district court's instruction gave the jury the proper law, and a jury is presumed to follow jury instructions. *Adams v. Wainwright*, 709 F.2d 1443, 1447 (11th Cir. 1983), *cert. denied*, 464 U.S. 1063, 104 S.Ct. 745, 79 L.Ed.2d 203 (1984). Nothing indicates that the jurors did not abide by the court's instructions. The jury found that Gerrits breached its contract with Tang How and then properly measured damages on a *quantum meruit* basis. *See Pan American Realty Trust*, 297 F.Supp. at 149; *see also United States ex rel. T.H. Electric v. J.D. Pirrotta*, 886 F.2d 297, 298 (11th Cir.1989); *Citizens National Bank of Orlando v. Vitt*, 367 F.2d 541 (5th Cir. 1966).

■ Gerrits also contends that the district court erred, as a matter of law, in awarding Tang How attorney's fees because Tang How elected at trial to proceed under its *quantum meruit* claim, and not under the written contract. To support its contention, Gerrits points out that generally, a federal litigant may not recover attorney's fees under the traditional "American rule." Likewise, attorney's fees are not recoverable in federal court except by statute, an enforceable contract between the parties, or where a party or attorney has acted in bad faith, wantonly, vexatiously, or for oppressive reasons. *See Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541 (11th Cir.1985). Gerrits's contention, however, is based upon the assumption that Tang How's *quantum meruit* recovery is totally separate and apart from its breach of contract claim. Gerrit's assumption is erroneous, and its argument must fail.

■ In this case, *quantum meruit* is one of the possible measures of damages for the contract remedy of breach of contract. *See Pan American Realty Trust*, 297 F.Supp. at 149. Generally, a subcontractor's proper measure of damages in a partial performance contract suit against a general contractor is either *quantum meruit* or the subcontractor's lost profit, together with the reasonable cost of labor and materials incurred in good faith in the course of partial performance of the contract. *See generally Restatement (First)*

*of Contracts* § 346 (1990). Thus, the district court properly concluded that Tang How was entitled to have its measure of damages calculated under a theory of *quantum meruit* for the services and material furnished in the construction of the building. *See Pan American Realty Trust*, 297 F.Supp. at 150.

 Additionally, the district court correctly recognized that Tang How's measure of damages could not be calculated in terms of both *quantum meruit* and lost profit expectancy because Tang How was only entitled to one recovery. Tang How chose to have its measure of damages calculated under a theory of *quantum meruit*. Nevertheless, the damage recovery was based upon the breach of contract. The record is clear that evidence on the breach of contract claim was offered to the jury, and the jury instructions addressed breach of contract. The contract clearly entitled the prevailing party in a lawsuit under the contract to recover reasonable attorney's fees and costs. Thus, the district court properly awarded Tang How its attorney's fees and costs. *See Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541 (11th Cir.1985).* We have reviewed all other claimed errors and find each of them to be without merit.

## VI. CONCLUSION

We hold that the district court properly permitted Tang How's recovery under the contract to be measured in terms of *quantum meruit*. Additionally, the jury's damage verdict was supported by the law and substantial evidence, and Tang How was entitled to attorney's fees. With respect to all other claims of error, we find them to be without merit. Thus, we affirm the district court's rulings.

AFFIRMED.

---

* This court also noted in *Kreager* that federal courts follow the "American rule" as set out in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). In *Alyeska Pipeline*, the Supreme Court noted that

> a very different situation is presented when a federal court sits in a diversity case. '[I]n an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed.'

*Alyeska Pipeline*, 421 U.S. at 259 n. 31, 95 S.Ct. at 1623 n. 31 (quoting J. Moore Federal Practice ¶ 54.77[2], at 1712–13 (2d ed. 1974) (footnotes omitted)). Florida's choice of law dictates that we apply the substantive law of the Virgin Islands to the claim for attorney's fees. Title 5 V.I.C. § 541(b) announces that a substantial policy of the Virgin Islands is to allow the prevailing party indemnification for a fair and reasonable portion of the attorney's fees incurred in the prosecution or defense of an action. *See Acosta v. Honda Motor Co., Ltd.*, 717 F.2d 828 (3d Cir.1983); *Estien v. Christian*, 507 F.2d 61 (3d Cir.1975); *Lucerne Investment Co. v. Estate Belvedere, Inc.*, 411 F.2d 1205 (3d Cir.1969); *Good Timez v. Phoenix Fire & Marine Ins. Co.*, 754 F.Supp. 459 (D.V.I.1991). The Virgin Islands has made this policy effective by making the allowance of the fee mandatory on its courts as indicated by the use of the verb "shall" in section 541(b). Since Tang How is the prevailing party, 5 V.I.C. § 541(b) also entitles it to indemnification of the fair and reasonable portion of the attorney's fees incurred in the prosecution or defense of this action.